1

2

3

4

5

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

8

United States of America,                     )
9                                              )          CR 06-01790-TUC-JMR (JCG)
          Plaintiff,                           )
10                                             )          **REPORT &**
vs.                                            )          **RECOMMENDATION**
11                                             )
Johnny Felix Tallabas,                         )
12                                             )
          Defendant.                           )
13    _____)

14          Pending before the Court is Defendant's Motion to Suppress filed on February 16,

15    2007. (Doc. No. 21.)  The United States filed a response on March 5, 2007. (Doc. No. 25.)

16    The Defendant did not file a reply.

17          Also pending before the Court is Defendant's Motion to Preclude Evidence of Prior

18    Convictions filed on February 16, 2007.  (Doc. No. 22.)  The United States filed a response

19    on March 7, 2007.  (Doc. No. 29.)   The Defendant did not file a reply.

20          This matter was set for evidentiary hearing and evidence was heard on March 29,

21    2007. Defendant Tallabas, who remains in custody at this time, was present and represented

22    by counsel.  This matter was submitted following oral argument at the conclusion of the

23    hearing and taken under advisement.

24          Having now considered the matter, the Magistrate Judge recommends that the District

25    Court, after its independent review, deny both of Defendant's Motions.

26                              **FACTUAL FINDINGS**

27          Two witnesses testified at the hearing on the Motion to Suppress.  Neal Antone, a

28    Ranger with the Tohono O'odham police department, testified that he is a non-commissioned

1  officer whose duties are limited to the observation and reporting of illegal activities. Ranger

2  Antone is required to report his observations to commissioned officers who have authority

3  to take further action.

4        On October 4, 2006, Ranger Antone was patrolling in the Little Tucson community

5  when he observed Defendant's truck, a white GMC pickup truck with a camper shell, pull out

6  of the "Martinez compound" and turn west onto Federal Route 16. Ranger Antone is familiar

7  with the compound and the surrounding area from his seven years patrolling the area on

8  horseback and in a patrol vehicle, and his forty years of living in the community. The

9  Martinez compound consists of approximately five houses within a large fenced-in area, the

10 outside of which is surrounded by dense brush and large items of debris. It is located in the

11 community of Little Tucson, which consists of approximately 60 houses over two areas. The

12 community of Little Tucson is approximately twenty to twenty-five miles north of the United

13 States' border with Mexico. Ranger Antone had never seen defendant's vehicle in the

14 community before.

15       Ranger Antone testified that the Martinez compound and surrounding brush are

16 known to be commonly used by aliens and alien smugglers. He testified that the compound

17 has a reputation among law enforcement officers as being a "load up" site for illegal aliens

18 to obtain transportation to other places farther north of the border. He stated that he

19 personally has come into contact with large groups of aliens in the area of the compound.

20       Ranger Antone was somewhat inconsistent in describing the number of times that he

21 had personally observed illegal activity at the compound. At one point he testified that he

22 personally observed illegal activity at the compound three times a week. He then described

23 three incidences where he personally observed illegal alien activity and reported the activity

24 to Border Patrol agents. He also testified that during his seven years as a ranger, he was

25 involved in approximately thirty arrests at the compound, approximately fifteen of which

26 involved transportation of undocumented aliens and another fifteen of which involved

27 undocumented aliens being apprehended on foot. He indicated that those thirty incidences

28

1   were the only instances of which he was aware where officers went to the compound.  On

2   cross-examination, he admitted that his  testimony that the Martinez compound served as a

3   load up house for undocumented aliens was based on speculation.

4          Ranger Antone testified that while following Defendant's truck, he observed that the

5   truck was riding low, weighted heavily in the back.  He drove within twenty feet of the truck

6   and saw two occupants, the driver and the front seat passenger.  Based on his experience and

7   training, he surmised that truck had contraband in the back which was causing it to ride low.

8   He followed the truck into Sells and called in a request that the license plates be checked for

9   registration information.

10          Sergeant Robledo approved the request and obtained information that the truck was

11  registered in Maricopa.  This information supported Ranger Antone's belief that the truck was

12  engaged in illegal activity.[1]  Ranger Antone testified that he is aware that many out-of-district

13  vehicles are involved in smuggling.  Ranger Antone conveyed his observations to Sergeant

14  Robledo.

15          Sergeant Martin Robledo is a nine-year veteran of the Tohono O'odham police

16  department.  He has been a supervisor for the past four years.  Sergeant Robledo is aware that

17  undocumented aliens in the Little Tucson area have typically walked across the border from

18  Mexico into the United States and he testified that he doesn't see much traffic other than local

19  traffic driving on Federal Route 16.   Sergeant Robledo testified that he himself had

20  responded to a number of calls at the Martinez compound, including domestic violence calls

21  and, although he had not personally been involved in investigation of alien smuggling at the

22  compound, he knew that border patrol agents were involved in investigations regarding

23  smuggling or harboring of aliens or drugs at the compound.

24

25          [1]Ranger Antone testified that any vehicle registered "off the Nation" would make him
26  suspicious of illegal activity because Federal Route 16, where Defendant's travel was first
    observed, is used only by the local residents, and he was not aware of any non-tribal
27  members who drove through that area or have business there.  According to Ranger Antone,
    non-tribal members typically travel on State Route 86, which is the main road through the
28  Nation.

1    Sergeant Robledo testified that after he ran the registration check for Defendant's

2    vehicle, he drove to Ranger Antone's location to observe the truck.  According to Sergeant

3    Robledo, the Maricopa registration was suspicious to him; on a daily basis he is involved in

4    incidents on the Nation where vehicles from the Phoenix area are involved in illegal activity.

5    When Sergeant Robledo first saw the Defendant's truck as it drove by him, he

6    observed the camper shell, observed no cargo within the bed of the truck, and saw that the

7    truck was riding low (the tail end was lower than the front end and had a slow bounce).

8    Sergeant Robledo observed a driver and passenger in the truck cab, then positioned his car

9    behind the truck, but saw nothing to explain why the truck was riding so low.  He followed

10   the truck for one to one and a half blocks before stopping the truck.  According to Sergeant

11   Robledo, he stopped the truck based on the totality of his experience that the truck was

12   registered out of the area, coming from an area known for illegal activities, and appeared to

13   be carrying a heavy load without any indication of what that load was. When Sergeant

14   Robledo and Ranger Antone approached the truck on foot, they saw, through the windows

15   in the camper shell, bodies laying in the rear compartment of the truck.   It was later

16   determined that the persons in the back of the truck were undocumented aliens.

### ANALYSIS

18   **1.      Motion to Suppress**

19   Defendant Tallabas contends that Sgt. Robledo stopped the Defendant's vehicle

20   without reasonable suspicion, in violation of the Defendant's Fourth Amendment rights.

21   The Fourth Amendment prohibits "unreasonable searches and seizures" by the

22   Government, and its protections extend to brief investigatory stops of persons or vehicles that

23   fall short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968).  A stop is justified

24   under the Fourth Amendment if the officer's action is supported by reasonable suspicion to

25   believe that the person stopped is, or is about to be, engaged in criminal activity. *See United*

26   *States v. Arvizu,* 534 U.S. 266, 273 (2002).  In making a reasonable suspicion determination,

27   the Court looks to the totality of the circumstances to evaluate whether the detaining officer

28   has a "particularized and objective basis" for suspecting legal wrongdoing.  *Id.*  An officer's

- 4 -

1  reasonable suspicion may be informed by the officer's own experience and specialized

2  training; an officer may make inferences from and deductions about the cumulative

3  information available to them that "might well elude an untrained person." *Id.*

4       In the present case, Sgt. Robledo had the requisite reasonable suspicion to initiate an

5  investigative stop of Defendant's vehicle.  The incident occurred close to the Mexico border,

6  and the driver was seen leaving an area that is known to be used as a pick-up point for aliens

7  or narcotics and traveling on a route commonly used for alien trafficking.  *See United States*

8  *v. Tiong*, 224 F.3d 1136, 1139 (9ᵗʰ Cir. 2000) (holding that characteristics of suspected

9  smugglers road on which investigatory stop of vehicle occurred justified reliance on area as

10  factor giving rise to reasonable suspicion for stop, including road's proximity to border,

11  tracks which indicated that road had been used as smugglers' rendezvous, and intelligence

12  information indicating that road was used as rendezvous).  In addition, Defendants' vehicle

13  was registered in Maricopa and was riding noticeably lower to the ground than most pickup

14  trucks, despite the fact that no load was visible.  Thus, the Court concludes that the totality

15  of the circumstances – proximity to the border, the location where the vehicle was originally

16  encountered, the vehicle's Maricopa registration and the heavily-loaded appearance of the

17  seemingly-unloaded vehicle – justified the stop.

18  **2.**      **Motion to Preclude Evidence of Prior Convictions**

19       Defendant has five prior felony convictions: in 1976, Defendant was convicted on

20  three counts (count 1 - rape, Count 2 - Lewd and Lascivious Conduct, and Count 3 - Burglary

21  in the First Degree), in 2002, Defendant was convicted of Third Degree Burglary, and in

22  2003, Defendant was again convicted of Third Degree Burglary.  Defendant objects to the

23  admission of any prior convictions as evidence.  The United States does not intend to

24  introduce evidence of Defendant's 1976 convictions.  Thus, the parties dispute the

25  admissibility of Defendant's 2002 and 2003 burglary convictions for impeachment purposes.

26       Rule 609(a)(1) of the Federal Rules of Evidence provides that, for the purpose of

27  attacking the character for truthfulness of a witness, "evidence that a witness other than an

28  accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime

1   was punishable by death or imprisonment in excess of one year under the law under which

2   the witness was convicted, and evidence that an accused has been convicted of such a crime

3   shall be admitted if the court determines that the probative value of admitting this evidence

4   outweighs its prejudicial effect to the accused."  The Ninth Circuit has outlined five factors

5   to guide the district court's decision whether to admit evidence under Rule 609(a)(1): (1) the

6   impeachment value of the prior crime, (2) the point in time of the conviction and the witness'

7   subsequent history, (3) the similarity between the past crime and the charged crime, (4) the

8   importance of the defendant's testimony and (5) the centrality of the credibility issue. *United*

9   *States v. Jimenez*, 214 F.3d 1095 (9th Cir. 2000) (citing  *United States v. Cook*, 608 F.2d

10  1175, 1185 n. 8 (9th Cir.1979) (en banc)).

11          Defendant argues that the burglary convictions are not admissible because they bear

12  no nexus to the charge for which the Defendant is facing prosecution in the instant case.

13  However, none of the factors, standing alone, are dispositive on the issue; rather, the Court

14  must balance all five factors. *See United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir.

15  1995).  This Court, after balancing all five factors, concludes that the probative value of

16  Defendant's 2002 and 2003 burglary convictions outweighs the prejudicial effect.

17          Factor one weighs in favor of admissibility of the prior convictions.  Prior convictions

18  for burglary are valuable for the purposes of impeachment, because they "reflected adversely

19  on the defendant's honesty and integrity."  *United States v. Oaxaca*, 569 F.2d 518, 526-27

20  (9th Cir. 1978).

21          Factor two weighs in favor of admissibility of the prior convictions.  Defendant's prior

22  convictions occurred relatively close in time to the current alien smuggling offense. *See id.*

23  (noting that 1967 and 1972 convictions for burglary and robbery were close in time to the

24  1976 alleged crime at issue).

25          Factor three weighs in favor of admissibility of the prior convictions.  Burglary and

26  alien smuggling are distinct and unrelated offenses.  Contrary to Defendant's assertion, a lack

27  of nexus between the prior conviction and the current offense weighs in favor of

28  admissibility.  Courts are disinclined to admit evidence of a prior conviction identical to the

1  current offense, because "[to] allow evidence of a prior conviction of the very crime for

2  which a defendant is on trial may be devastating in its potential impact on a jury ... [W]here

3  ... the prior conviction is sufficiently similar to the crime charged , there is a substantial risk

4  that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency

5  to draw a conclusion which is impermissible in law: because he did it before, he must have

6  done it again." *United States v. Wallace*, 848 F.2d 1464, 1473 (9th Cir. 1988).  Thus, the risk

7  of prejudicial effect is lessened when the prior conviction and the current offense are

8  unrelated.

9          Factor four weighs in favor of admissibility of the prior convictions.  It is anticipated

10  that Defendant will defend the charge by testifying that he offered to give one person a ride

11  and several people came out of the brush and jumped into his vehicle, such that Defendant

12  did not know that he was transporting undocumented aliens and did not commit the current

13  offense for profit. Defense counsel has disclosed that she also intends to call one of

14  Defendant's passengers to testify as to the nature and circumstances of the aliens' presence

15  within the vehicle.  Thus, although the Defendant's testimony in this case is important, it is

16  not the only evidence in support of his defense.

17          Factor five weighs in favor of admissibility of the prior convictions. It is anticipated

18  that Defendant will testify in order to "explain the circumstances giving rise to the presence

19  of the individuals in his vehicle, while establishing a lack of *mens rea* to the instant offense."

20  (Defendant's Motion, pgs. 3-4.)  Defendant concedes that credibility is therefore a central

21  consideration in this case.  (*Id.*)

22                                    **RECOMMENDATIONS**

23          In view of the foregoing, it is recommended that, after its independent review of the

24  record, the District Court DENY Defendant Tallabas' Motion to Suppress (Doc. No. 21) and

25  DENY Defendant Tallabas' Motion to Preclude Evidence of Prior Convictions.  The parties

26  have **ten (10) days** to serve and file written objections to the Report and Recommendation.

27  The parties are advised that any objections should be filed with the following caption:

28  **CR-06-01790-TUC-JMR**.

- 7 -

1       DATED this 5th day of April, 2007.

2

3

4

5

6

7

8                                                    Jennifer C. Guerin
                                              United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28